```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF LOUISIANA
```

DANIEL CLAY WILKERSON                           CIVIL ACTION

VERSUS                                          NO: 11-676

LOUPE CONSTRUCTION AND                          SECTION: R
CONSULTING COMPANY, INC.

## ORDER AND REASONS

Before the Court is defendant Loupe Construction and Consulting Company, Inc.'s ("Loupe") motion for summary judgment on the issue of maintenance and cure. Because the Court finds that defendant has established its defense under *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547 (5th Cir. 1968), the Court GRANTS defendant's motion.

## I.   BACKGROUND

Wilkerson has brought suit under the Jones Act and general maritime law against defendant Loupe Construction. On July 23, 2010, while Wilkerson was serving as captain aboard the M/V SEA SLAVE, the vessel capsized. Wilkerson claims injuries to his "back, neck, spine, and mind"[1] and seeks judgment against Loupe for maintenance and cure, including attorneys' fees and compensatory and punitive damages arising out of the denial of maintenance and cure.[2]

---

[1]    R. Doc. 1 at 2.

[2]    *Id.* at 2-3.

Wilkerson filed a motion requesting an expedited trial on the issue of maintenance and cure, which this Court granted.[3] In the meantime, Loupe filed this motion for summary judgment on the maintenance and cure issue. Loupe asserts a defense under *McCorpen* based on Wilkerson's asserted withholding of material information about his medical condition when he completed two personal history questionnaires as part of his application for employment with Loupe.[4] Wilkerson opposes the motion. For the following reasons, the Court grants defendant's motion for summary judgment.[5]

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or

---

[3]   R. Doc. 20.

[4]   R. Doc. 22-1 at 6-8.

[5]   R. Docs. 33, 34.

weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* 2d § 2738 (1983)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The

burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *Id.* at 325; *see also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (citing *Celotex*, 477 U.S. at 332).

**III. DISCUSSION**

**A.   The *McCorpen* Defense**

Seamen have a right to maintenance and cure for injuries that they suffer in the course of their service on a vessel, regardless of whether the shipowner was at fault or the vessel was unseaworthy. *See O'Donnell v. Great Lakes Dredge & Dock Co.*, 318 U.S. 36, 41-42 (1943); *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995). "Maintenance" is the right of a seaman to food and lodging if he becomes injured during the course of fulfilling his duties to the ship. *See Guevara*, 59 F.3d at 1499. "Cure" is the right to necessary medical services. *Id.* Before a plaintiff can recover maintenance and cure, he bears the

burden of alleging and proving the following facts: (a) his engagement as a seaman; (b) that his illness or injury occurred, was aggravated, or manifested itself while in the ship's service; (c) the wages to which he may be entitled; and (d) the expenditures or liability incurred by him for medicines, nursing care, board, and lodging. *See Foster v. Brian's Trans. Serv., et al.*, 1993 WL 114528, at *2 (E.D. La. 1993) (citing Martin Norris, 2 *The Law of Seamen* § 26.21 at 53 (Supp. 1992)). Defendant does not contest that Wilkerson worked for Loupe in the service of the M/V SEA SLAVE.

Maintenance and cure may be awarded "even where the seaman has suffered from an illness pre-existing his employment." *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d at 548. Yet, there is a "general principle that it will be denied where he knowingly or fraudulently conceals his illness from the shipowner." *Id.*; *Bodden v. Prof'l Divers of New Orleans, Inc.*, 2001 WL 1223589, at *2 (E.D. La. 2001) (discussing *McCorpen* defense). Specifically, when the shipowner requires a prospective seaman to undergo a pre-hiring medical evaluation, and the seaman either intentionally misrepresents or conceals material medical facts, then the seaman is not entitled to an award of maintenance and cure. *See McCorpen*, 396 F.2d at 549. For a shipowner or employer to rely on this legal defense, known as the *McCorpen* defense, to deny a seaman's maintenance and cure claim, the employer must

establish: (1) that the seaman has intentionally misrepresented or concealed medical facts; (2) the misrepresented or concealed facts were material to the employer's hiring decision; and (3) there exists a causal link between the pre-existing disability that was concealed and the disability suffered during the voyage. *Id. See also Brown v. Parker Offshore Drilling*, 410 F.3d 166, 171 (5th Cir. 2005) (finding *McCorpen* defense established). Here, the Court finds that Loupe has established each element of its defense under *McCorpen*.

*i.   Intent to Conceal*

As part of his application for employment, Wilkerson completed on June 15, 2010 two questionnaires inquiring into his medical history. On the Personal Health History questionnaire, he circled "NO" when asked each of the following questions: "Have you ever had or do you now have ... Back injury, back pain or sciatica;" "Have you had any illnesses or injuries other than those listed above;" "Are you taking any medicine or drugs now;" and "Have you consulted or been treated by clinics, physicians, healers or practitioners within the past five years?"[6] On the Second Injury Fund Questionnaire, Wilkerson checked the "NO" column when asked whether he had ever been bothered by "Ruptured Vertebrate;" "Disc;" "Neck Problems;" and whether he had "ever

---

[6]   R. Doc. 22-4 at 1-2.

injured or had trouble with [his] back."[7] Finally, he wrote "no" when asked whether he was currently on medication.[8] At the end of each questionnaire, Wilkerson signed a statement attesting to the truth of his declarations.[9]

Discovery in this case reveals that all of the above declarations were untrue. Wilkerson provided medical history information to Dr. Robert Lightfoot on January 7 and February 3, 2011 when he sought examination and treatment for his neck and back injuries.[10] Dr. Lightfoot's January 7 treatment note indicates that Wilkerson's primary complaint was "chronic back & neck pain" occurring since 1999.[11] His note of February 3 indicates that such pain began in 1999 in connection with "ruptured discs."[12] Wilkerson noted "Back Issues" and "Neck Issues," each with an "onset" of 2004, on a Victory Health Center Database Tool completed in connection with Dr. Lightfoot's treatment.[13] Also on the database tool, Wilkerson admitted being

---

[7]  *Id.* at 3-4.

[8]  *Id.* at 4.

[9]  *Id.* at 2, 4.

[10] R. Doc. 22-5.

[11] *Id.* at 2.

[12] *Id.* at 4.

[13] *Id.* at 6.

involved in a 1999 motor vehicle collision.[14] Dr. Lightfoot's deposition testimony confirms that the information contained in these records was an accurate recording of the plaintiff's reported medical history.[15] Loupe also obtained Wilkerson's patient prescription summary from Rx Express Pharmacy, which indicated that he was prescribed Hydrocodone (Lortab) 10 mg, Diazapam (Valium) 10 mg, and Carisoprodol (Soma) 350 mg, in the months before his application with Loupe.[16] On July 21, 2010, the night before the alleged incident aboard the M/V SEA SLAVE, Wilkerson was found in possession of prescription narcotics by the St. Bernard Parish Sheriff's Department.[17] In his Response to Loupe's summary judgment motion, Wilkerson admitted: 1) suffering ruptured discs in his neck and back in a 1999 motor vehicle collision; 2) experiencing chronic neck and back pain; and 3) filling prescriptions for drugs mentioned above in the months before his application for employment with Loupe.[18]

Loupe has conclusively shown that Wilkerson intentionally misrepresented and concealed medical facts when he applied for employment. Critically, the Fifth Circuit has held that "the

---

[14]  *Id.*

[15]  R. Doc. 34-3 at 2-5.

[16]  R. Doc. 22-6 at 3.

[17]  R. Doc. 22-7 at 2.

[18]  R. Doc. 28-1.

'intentional concealment' element does not require a finding of subjective intent." *Brown*, 410 F.3d at 174 (quoting *Vitcovich v. Ocean Rover O.N.*, 1997 U.S. App. LEXIS 724, at *10 (9th Cir. 1997)). Rather, "[f]ailure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information [] satisfies the 'intentional concealment' requirement." *Id.* (quoting *Vitcovich*, 1997 U.S. App. LEXIS 724, at *10 (9th Cir. 1997). Intentional concealment can thus be established as a matter of law. *Id.* As Loupe has demonstrated that Wilkerson withheld pertinent medical information requested as part of its application process, Loupe has satisfied the first prong of its *McCorpen* defense.

   *ii. Materiality*

   If an employer asks a specific medical question on an application, and the inquiry is rationally related to the applicant's physical ability to perform his job duties, the information is material for the purpose of the *McCorpen* analysis. *Id.* at 175. Wilkerson does not contest that questions probing applicants for information regarding past and present neck injuries, back injuries, and drugs taken are material to Loupe's hiring decisions. Indeed, Loupe's Director of Operations attests that Wilkerson would not have been hired had he disclosed truthfully his medical conditions and prescription drug

regimen.[19] Loupe has satisfied the second criterion in the analysis.

### iii. Causal Link

Under the causal relationship prong, the present injury need not be identical to a previous injury. "All that is required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." *Brown*, 410 F.3d at 176 (quoting *Quiming v. Int'l Pac. Enters., Ltd.*, 773 F. Supp. 230, 236 (D. Haw. 1990)). The test applied is "not a causation analysis in the ordinary sense." *Johnson v. Cenac Towing, Inc.*, 599 F. Supp. 2d 721, 728 (E.D. La. 2009). Rather, "the *McCorpen* defense will succeed if the defendant can prove that the old injury and the new injury affected the same body part." *Id.* (citing *Brown*, 410 F.3d at 176). *See also Weatherford v. Nabors Offshore Corp.*, 2004 U.S. Dist. LEXIS 3435, at *7. (E.D. La. 2004). Wilkerson's injuries aboard the M/V SEA SLAVE were to his back and neck – the same body parts in which he suffered ruptured discs in a 1999 accident and chronic pain since. The "causal connection," for the purposes of this analysis, is clear.

---

[19] R. Doc. 22-2.

**B. Wilkerson's Arguments**

Instead of responding to the substance of Loupe's arguments, Wilkerson argues that Loupe did not plead the *McCorpen* defense affirmatively, that Loupe waived its right to assert the defense, and that its evidence is not properly authenticated.

> *i. Failure to plead* McCorpen *defense*

Wilkerson's argument that Loupe failed to plead the *McCorpen* defense is meritless. Loupe conspicuously raised its *McCorpen* defense in its First Supplemental and Amending Answer and Affirmative Defenses.[20] There, Loupe asserted as its Seventeenth Defense the following:

> If Loupe is found to have been Plaintiff's employer, which is specifically denied, then the Plaintiff intentionally misrepresented or concealed medical facts, which non-disclosed facts were material to Loupe's decision to hire the Plaintiff, and a connection exists between the withheld information and the injuries complained of in Plaintiff's Original and First Amended Complaint.

Wilkerson's argument is therefore rejected.

> *ii. Waiver*

Next, Wilkerson argues that "defendant has waived the McCorpen defense by untruthfully denying employer/employee

---

[20] R. Doc. 15.

relationship at the onset."[21] The Federal Rules of Civil Procedure are quite clear: "A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Accordingly, Loupe did not waive its defense by raising an alternative defense that it did not employ Wilkerson.

### iii. Authentication

Finally, Wilkerson "objects to the authenticity and use of the alleged employment records from Loupe[.]"[22] Federal Rule of Civil Procedure 56(c)(2) indicates that a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." However, Rule 901(a) of the Federal Rules of Evidence provides that "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Wilkerson's Job Application, Personal Health History, and Second Injury Fund Questionnaire submitted with Loupe's motion for summary judgment were first authenticated by the declaration of Loupe's Director of Operations Richard Herndon, Sr.[23] There, Herndon declared that Wilkerson "was

---

[21]   R. Doc. 28.

[22]   *Id.*

[23]   R. Doc. 22-2.

required to" and did in fact complete the Personal Health History and Second Injury Fund Questionnaire when he applied for the job with Loupe.[24] Further, Loupe submitted the declaration of Angie Martin, Loupe's Chief Financial Officer, who maintains oversight of Loupe's records and files.[25] Martin declared that these employment records "are true and correct copies of documents contained in Loupe's personnel files[.]"[26]

Wilkerson has not argued that he did not complete and sign the employment documents that Loupe has introduced, nor has he alleged that the records are either fraudulent or incomplete.[27] He has not raised an issue of fact as to their authenticity, and the Court has no reason to find that the records are anything other than what defendant and its declarants claim they are. Because these materials are admissible under Federal Rule of Evidence 901, Wilkerson's objection is without merit.

---

[24]    *Id.* (referencing R. Docs. 22-3, 22-4).

[25]    R. Doc. 31-1.

[26]    In federal court, unsworn declarations may substitute for an affiant's oath if the statement contained therein is made "under penalty of perjury" and verified as "true and correct." 28 U.S.C. § 1746; *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987). Herndon's and Martin's declarations satisfied these dictates, and are thus properly admitted to authenticate the employment records that Loupe submitted.

[27]    Rather, Wilkerson has merely "denied for lack of authentication of employment records" portions of Loupe's Statement of Uncontested Facts, R. Doc. 22-9.

## III. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted.

New Orleans, Louisiana, this 18th day of October, 2011.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE